UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
KISHOR KUMAR RAO and
POORNIMA KISHOR,

               Plaintiffs,

          - against -

THE CITY OF NEW YORK; DETECTIVE KEVIN
WARMHOLD; POLICE OFFICER YISEL
CABRERA; DETECTIVE MICHAEL RISO;
DETECTIVE JOHN GRIDLEY; and
POLICE OFFICERS JOHN DOE #1–10,

              Defendants.
-------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
14-CV-7422 (RRM) (LB)

ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiffs Kishor Kumar Rao and Poornima Kishor commenced this action pursuant to 42

U.S.C. § 1983, alleging that defendants City of New York, Detective Kevin Warmhold, Police

Officer Yisel Cabrera, Detective Michael Riso, and Detective John Gridley violated Rao's civil

rights on September 25, 2013 by, *inter alia*, unlawfully arresting him and using excessive force.[1]

Defendants now move for partial summary judgment pursuant to Federal Rule of Civil Procedure

("Rule") 56, on the grounds that Rao's federal and state law false arrest claims, his state law

false imprisonment claim, as well as his malicious abuse of process claim, fail because the

officers had probable cause to arrest.  (*See* Mot. for Summ. J. (Doc. No. 64).)  For the reasons

stated below, the defendants' motion for partial summary judgment is granted in part and denied

in part.

---

[1] Rao and Kishor have agreed to withdraw their claims of malicious prosecution, denial of a right to a fair trial, and
all claims against Detective Riso and the City of New York.  (Ltr. (Doc. No 54); Opp'n (Doc. No. 68-1) at n.5.)
They have also agreed to dismiss all of Poornima Kishor's remaining claims.  (Opp'n at n. 6.)  Accordingly,
Poornima Kishor, Detective Riso, and the City of New York are dismissed as parties to this action.

Rao's legal troubles began on February 27, 2013, when Shahjahan Khan visited his medicinal supplements business that she had heard about on TV.  (Defs.' Ex. C. (Doc. No. 67-3) at 3.)  Khan, a 66 year-old woman, describes herself as "not healthy," and she says she has trouble remembering things.  (*Id.*)  Hoping to restore her health, she went to Holistic Healthcare Society and Research Center, Rao's business.  (*Id.*)  The precise details of what happened next are murky.  In a statement Khan prepared on March 6, 2013, she wrote that the doctor, Rao, asked her questions about her personal life, who supports her, and how much money she has saved for retirement.  (*Id.* at 3–4.)  Rao assured Khan that he will make her feel better.  (*Id.* at 4.)  He then gave Khan "a medicine," a pill or powder of some kind, that Khan said made her feel dizzy and confused.  (*Id.*)  She was told that her Medicare card was not working and that she would have to pay in cash.  (*Id.* at 5.)  She remembered that Rao became "very angry," and told her that if she does not pay her medical bill, he "will straighten [her] out."  (*Id.*)  Khan described how the people at Rao's business rummaged through her wallet and asked for her PIN number.  (*Id.*)  Rao then allegedly called Khan's credit card company and said Khan was in the hospital and needed to pay her bill.  (*Id.*)  A woman then accompanied Khan to Chase Bank, where Khan withdrew $25,600, though she does not remember precisely how the lady got her to withdraw the money.  (*Id.*)  Khan described feeling scared.  (*Id.* at 4, 6.)

One week later, on March 5, 2013, Khan and her daughter, Mubiha, filed a complaint with the New York Police Department ("NYPD").  (Defs' 56.1 Statement (Doc. No. 65) ¶ 2.)  Khan reported that Rao had "threatened/forced" her to withdraw $25,600 from her bank account in exchange for medicinal supplements.  (*Id.* ¶ 3.)  The next day, Khan made the same complaint

---

[2] The facts are taken from the record and are undisputed unless otherwise noted.

to the Queens County District Attorney's Office, and the case was assigned to Assistant District Attorney ("ADA") Khadijah Muhammad-Starling and Detective (then-police officer) Kevin Warmhold, who worked at the 106th Precinct. (*Id.* ¶¶ 3–5, 7.) Mubiha appears to have filled out a form for the District Attorney's Office in which she described her mother's experience of feeling "drunk" after taking the pill Rao had given her. (Defs.' Ex. C. at 2.) She also noted on the form that her mother is 66 years old and had been diagnosed with "mild cognitive impairment" a year ago. (*Id.*)

As part of his investigation, Warmhold visited the Chase Bank, where Khan had withdrawn $25,600. (Defs.' Ex. E. (Doc. No. 67-5) at 3.) A manager there confirmed that he had approved Khan's transaction after a bank teller called him over to authorize it. (*Id.*) He remembered that he asked Khan why she was taking out so much money; she had responded that she needed to pay a medical bill. (*Id.*) Warmhold also interviewed Khan, who recounted her visit to Rao's office and added that the day after the incident, she received a phone call instructing her not to tell anyone, including her daughter, about her visit. (*Id.* at 7.) Warmhold then unsuccessfully attempted to interview Rao. (*Id.* at 6, 10.) He spoke with one of Rao's employees though, who said that Khan had "left happy." (*Id.* at 13.)

As their investigations progressed, ADA Starling and Warmhold conferred. Warmhold's police notes suggest that on April 4, 2013, Starling informed Warmhold that she intended to seek a grand jury indictment of Rao. (*Id.* at 14.) Three weeks after that conversation, on April 25, 2013, Warmhold activated an Investigation Card ("I-card"),[3] identifying Rao as a wanted perpetrator with probable cause to arrest. (*Id.* at 16.) Warmhold alleges that he went to Rao's

---

[3] "An I-Card is a device detectives use to notify patrol officers that a person is wanted for questioning either as a witness or suspect." *Keith v. City of New York*, No. 11-CV-3577 (KPF), 2014 WL 6750211, at *2 (S.D.N.Y. Dec. 1, 2014) (internal citations omitted). It specifies whether there is probable cause to arrest.

residence that day to arrest him, but Rao would not answer the door.  (*Id.* at 17.)  Rao denies that he "ever refuse[d] to cooperate with any part of the investigation."  (Pl.'s 56.1 Statement (Doc. No. 68-1) at 4.)

One month later, on June 24, Warmhold contacted Officer Remson of Customs and Border Patrol at JFK Airport, who placed "a hold" on Rao should he try to leave the country. (Defs.' Ex. E at 20.)  At some point afterwards, Starling again spoke with Warmhold.  In her deposition, Starling says that she told him that she was hoping to "get medical evidence to substantiate the mental health of Mrs. Khan."  (Defs.' Ex. D (Doc. No. 67-4) at 12.)  Because she was "waiting to see if there was any additional evidence," she was under the impression that she and Warmhold "would have communicated" prior to any arrest.  (*Id.*)  In his deposition, Warmhold says that Starling informed him that she was waiting on financial records, rather than medical ones.  (Defs.' Ex. X (Doc. No. 71) at 6–7.)  Though the record is not clear as to when this conversation took place, Warmhold's notes relate that on July 31, Starling informed him that her office would not be prosecuting Rao's case "at this time."  (Defs.' Ex. E at 21.)

At some point during the investigation – possibly in June or August – Detective Riso visited Rao at his home.[4]  (Pl.'s Ex. J (Doc. No 69-9) at 2.)  Rao invited him in, but the record does not reveal what they discussed.  Riso explained at his deposition that Warmhold told him not to bring Rao to the precinct at that time.  (*Id.* at 3.)  On September 7, 2013, Warmhold administratively closed his investigation "C-12," which the defendants assert signified that "the next step in the investigation was to locate plaintiff Rao."  (Defs.' 56.1 Statement ¶ 20.) Warmhold left the I-card for Rao's arrest active.  (*Id.* ¶ 19.)

---

[4] In his response to the defendants' 56.1 Statement, Rao says that Riso visited his home on August 22.  (Pl.'s 56.1 Statement at 4.)

On September 25, 2013, Warmhold received a call from Customs and was notified that Rao was at John F. Kennedy Airport.  (Pl.'s Ex. G (Doc. No. 69-7) at 7.)  Warmhold "was working on another case at the time," and told Officers Cabrera and Gridley to arrest Rao at the airport for Grand Larceny in the Fourth Degree.  (Defs.' 56.1 Statement ¶ 21; Pl.'s Ex. G at 7.)  Rao testified at his deposition that, in a holding cell following his arrest, Warmhold tried to extort a $100,000 bribe from him, payable to the "police welfare society."  (Rao Dep. (Doc. No. 69-12) at 5.)  In exchange, Warmhold would let Rao carry on his business "as [he] want[s]." (*Id.*)  When Rao refused "again and again," Warmhold allegedly hit him in the face with the butt of his gun and "smashed [Rao's] head" into the wall.  (*Id.* at 6.)  The defendants deny that any such exchange took place.  Rao has undergone extensive dental surgery since the alleged assault, and his dentist wrote that the dental problems are consistent with "severe facial trauma."  (Pl.'s Ex. T (Doc. No. 69-20) at 1.)[5]  The Queens District Attorney's Office declined to prosecute Rao, and he was released prior to arraignment.  (Defs' 56.1 Statement ¶¶ 29–30.)

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed," and the court must draw all "justifiable" or "reasonable" inferences

---

[5] Rao has also brought an excessive force claim, which the defendants have not moved against.

in favor of the non-moving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *see also Brosseau v. Haugen*, 543 U.S. 194, 195 n.2 (2004). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*,'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citing cases). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256.

Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quoting *Celotex*, 477 U.S. at 322) (internal quotation marks omitted). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247–48).

## DISCUSSION

### I.  False Arrest

The elements of a Section 1983 claim for false arrest are "substantially the same" as those of a "claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996), *cert. denied*, 528 U.S. 946 (1999). "Under New York state law, to prevail on a claim of false arrest a plaintiff must show that '(1) the defendant intended to confine him, (2) the

plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Jocks v. Tavernier*, 316 F.3d 128, 134–35 (2d Cir. 2003) (quoting *Broughton v. State*, 37 N.Y.2d 451, 456 (N.Y.), *cert. denied*, 423 U.S. 929 (1975)). "Under New York law, the existence of probable cause is an absolute defense to a false arrest claim." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006).

Here, Rao brings a false arrest claim against Detective Warmhold and arresting officers Cabrera and Gridley. The defendants argue that Warmhold had probable cause to arrest Rao based on Kahn's complaint that Rao defrauded her. (Defs.' Mem. (Doc. No. 66) at 14–18.) Rao argues that Kahn's complaint alone was insufficient for probable cause; and even if the complaint gave rise to probable cause, intervening facts in the subsequent six months vitiated probable cause, including ADA Starling's decision not to prosecute. (Opp'n (Doc. No. 68) at 12–23.) For the reasons stated below, Rao's arguments are unavailing, and the officers had probable cause to arrest Rao.

A. *Probable Cause at the Time of Kahn's Complaint*

An officer has probable cause to arrest when he has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jocks*, 316 F.3d at 135 (internal quotation marks omitted). Applying that standard here, Warmhold had probable cause to arrest Rao for grand larceny in the fourth degree, as well as other possible crimes. Under New York law, a person is guilty of grand larceny in the fourth degree when "he steals property," such as money, and "[t]he value of the property exceeds one thousand dollars" or "the property, regardless of its nature and value, is obtained by extortion."

N.Y.P.L § 155.30.  In addition, there was probable cause to arrest Rao for a scheme to defraud in the second degree, N.Y. Penal Law § 190.60.[6]

The Second Circuit has repeatedly held that "an arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest . . ." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995); *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006).  Here, the complaining victim's claims that Rao's medicine made her feel dizzy or drunk, her description of feeling intimidated, and the large sum of money involved, all indicated possible criminal activity.  The police corroborated much of Khan's account by visiting Rao's business and the Chase Bank where she withdrew the $25,600.  This was sufficient to create probable cause.

### B.  Intervening Facts

The question then becomes whether there were any intervening facts between March 5, when Khan went to the police, and September 25, when Rao was arrested, that vitiated probable cause.  Even when probable cause exists "at the time of arrest, evidence could later surface which would eliminate probable cause."  *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996) (internal quotation marks omitted).  Ultimately, the Court finds there were no such intervening facts, but considers each possibility in turn.

A victim's statements about an alleged crime give officers probable cause "absent circumstances that raise doubts as to the victim's veracity."  *Singer*, 63 F.3d at 119.  The "reliability or veracity" of the complaining victim is an important factor for the police to

---

[6] "A person is guilty of a scheme to defraud in the second degree when he engages in a scheme constituting a systematic ongoing course of conduct with intent to defraud more than one person or to obtain property from more than one person by false or fraudulent pretenses, representations or promises, and so obtains property from one or more of such persons."  N.Y.P.L § 190.60.

consider.  *Panetta*, 460 F.3d at 395.  "The failure to make a further inquiry when a reasonable person would have done so may be evidence of a lack of probable cause."  *Lowth*, 82 F.3d at 571 (internal quotation marks omitted).  There came a point during Warmhold's investigation that he may well have developed reason to doubt Khan's reliability.  Specifically, ADA Starling testified at her deposition that she spoke with Warmhold and told him that she was hoping to receive medical records that would substantiate Khan's mental stability.  (Defs.' Ex. D at 12.) Warmhold's account of their conversation differs:  he remembers Starling telling him that she wanted financial records.  (Defs.' Ex. X at 6–7.)  However, taking the record in the light most favorable to Rao, Starling's possible concerns about Khan's mental stability should have given Warmhold pause.  Because the reliability of the complaining witness is an important factor, Warmhold had a duty to investigate.

However, Warmhold had already corroborated Khan's story by visiting Chase Bank and interviewing Khan and one of Rao's employees.  In addition, the bank manager's version lined up with Khan's account – Khan went to Chase with another woman and requested $25,600 to pay for a medical bill.[7]  This investigation sufficiently substantiated Khan's accusations to give rise to probable cause.

Rao also suggests that a letter he sent to Warmhold in April vitiated probable cause. (Rao Ltr. (Doc. No. 69-21) at 1–2.)  The letter explains that Kahn told him that her daughter Mubiha wants the money for herself and that her husband wants to spend any reimbursement on

---

[7] It is perhaps odd that Warmhold instructed Riso not to arrest Rao when Riso was at Rao's home.  This delay in effectuating Rao's arrest could evidence Warmhold's skepticism about Khan's reliability.  *See, e.g.*, *Jovanovic v. City of New York*, No. 04-CV-8437 (PAC), 2006 U.S. Dist. LEXIS 59165, at *20 (S.D.N.Y. Aug. 17, 2006) (a nine-day delay in arresting the suspect contributed to the court's determination that probable cause did not exist because, in light of the victim's graphic and violent account, a reasonable officer would not have waited nine days to arrest). Nothing else in the record indicates that Warmhold doubted Khan's story, however, and instead the record appears to corroborate much of her account.  Accordingly, the delay in arresting Rao does not by itself vitiate probable cause.

his six children from his first wife. (*Id.*) As a result, "all family members" were forcing Khan to "make false complaints" against Rao so that they could get a refund from him while Khan continues to use a "large quantity of purchased Merchandise." (*Id.*)

This letter, without more, amounts to a suspect's denial to an investigating officer that he is guilty. "Generally, a suspect's denials are insufficient to obviate probable cause." *Weiner v. McKeefery*, 90 F. Supp. 3d 17, 31 (E.D.N.Y. 2015) (internal citations and quotation marks omitted). That is, "an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." *Panetta*, 460 F.3d at 395–96 (internal quotation marks omitted); *accord Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001). ("[T]he arresting officer does not have to prove the plaintiff's version wrong before arresting him. Nor does it matter that an investigation might have cast doubt upon the basis for the arrest.").[8] Thus, Rao's letter to Warmhold did not undermine probable cause to arrest Rao based on Kahn's victim complaint.[9]

Rao's final theory is that ADA Starling's decision not to prosecute Rao prior to his arrest vitiated any probable cause to arrest. (Opp'n at 18–19.) Starling told Warmhold in July that she no longer intended to prosecute the case, and yet, Rao was arrested at the end of September. Nevertheless, a prosecutor's determination not to file an indictment, even if made prior to an arrest, does not eliminate probable cause. The existence of probable cause turns on whether

---

[8] To the extent that Rao wishes to admit the letter for the truth of Mubiha's statements, those statements are inadmissible hearsay. *See* Fed. R. Evid. 801, 803; *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.").

[9] Rao also asserts two inconsistencies based on the differences between statements that Kahn made to Detective Warmhold and that she made to her daughter, Mubiha. However, statements that Kahn made to Mubiha about which Detective Warmhold was unaware cannot have any effect on the probable cause determination based on what Detective Warmhold knew at the time of arrest.

there is sufficient evidence that a crime has been committed; the likelihood of proving guilt beyond a reasonable doubt is not relevant. *See Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007) (Probable cause "requires only such facts as make wrongdoing or the discovery of evidence thereof probable."). An "officer's awareness of facts supporting a defense" – self-defense, for instance – "can eliminate probable cause" because the facts eliminate the presence of a crime. *Jocks*, 316 F.3d at 135. An ADA's decision not to prosecute, by contrast, does not eliminate the presence of a crime, but rather indicates that she may need additional evidence to convince a jury beyond a reasonable doubt. *See Quinn v. City of New York*, No. 99-CV-7068 (JBW), 2003 WL 1090205 at *4 (E.D.N.Y. Mar. 12, 2003) ("The District Attorney's failure to prosecute furnishes no support to plaintiff's claim of false arrest. The validity of an arrest does not depend on a finding of innocence or any other disposition."); *see also Bini v. City of Vancouver*, No. 16-CV-5460 (BHS), 2017 U.S. Dist. LEXIS 77680, at *19–20 (W.D. Wash. May 22, 2017) (holding that an officer's decision not to withdraw an investigation card to arrest after learning that the "prosecutor would not pursue the case" without additional witnesses had no bearing on the court's probable cause inquiry).[10]

Nothing in the record indicates that Starling declined to prosecute because she had concerns about probable cause. In her conversations with Warmhold, she suggested that she would not prosecute because she did not have enough evidence to prove Rao's guilt beyond a reasonable doubt. In her deposition testimony, she clarified that "there was probable cause for an arrest, based on the complaint of Mrs. Khan. However, we were developing this case as we

---

[10] The defendants cite to an out-of-circuit case, which notes that the mere fact that "the City prosecutor declines to prosecute the homeless for public intoxication does not divest the City police of the authority to arrest individuals whom they have probable cause to suspect have violated the law." *Church v. City of Huntsville*, 30 F.3d 1332, 1346 n.8 (11th Cir. 1994). The opinion suggests that the City did not enforce certain public intoxication crimes. This case presents a somewhat different context, but helps lend support to the notion that probable cause determinations are independent of any decision to prosecute.

like to do in our investigative division, so that we knew that we could also prove beyond a reasonable doubt." (Defs.' Ex. D. at 12.) Accordingly, there was probable cause to arrest Rao.

## C. Collective Knowledge

Under the "collective knowledge" doctrine, or the "fellow officer" rule, Cabrera and Gridley were entitled to rely on an I-card as providing probable cause for Rao's arrest at the airport. On the basis of Kahn's corroborated victim complaint, Warmhold activated an I-card for Rao's arrest.[11] The collective knowledge doctrine provides that "arresting officers do not need to independently determine that probable cause exists as long as the officer ordering the arrest possesses sufficient probable cause to direct it." *Watkins v. Ruscitto*, No. 14-CV-7504 (AJP), 2016 U.S. Dist. LEXIS 89499, at *15 (S.D.N.Y. July 11, 2016); *see also United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001) ("Under the collective or imputed knowledge doctrine, an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation.").

Kahn's corroborated victim complaint provided Warmhold with probable cause to arrest Rao. The I-card specified that Rao was wanted as a suspect, and that there was probable cause to arrest. (Defs.' Ex. E at 16.) It was appropriate for Cabrera and Gridley to rely on this active I-card. *See Watkins*, 2016 WL 3748498, at *6 (granting summary judgment on a false arrest claim where an officer with knowledge sufficient to support probable cause activated an I-card,

---

[11] Rao highlights that the I-card was activated in April 2013, but the arrest was not effectuated until September 2013. "While probable cause could dissipate if the groundless nature of the charge [were] made apparent by the discovery of some intervening fact," here, as noted above, "there is no evidence in the record to support an inference that the defendant-officers had any intervening facts at their disposal." *Wieder v. City of New York*, 569 F. App'x 28, 29 (2d Cir. 2014) (internal quotation marks and citations omitted).

and other officers relied on that I-card in effectuating an arrest). Moreover, Warmhold, who had probable cause to arrest, specifically instructed Cabrera and Gridley to go arrest Rao. (Pl.'s Ex. F at 7.) Because probable cause is a complete defense to a false arrest claim, the defendants' motion for summary judgment as to Rao's claim for false arrest against Warmhold, Cabrera, and Gridley is granted. *Jaegly*, 439 F.3d at 152; *Johnson v. City of New York*, No. 15-CV-1625 (SMG), 2017 U.S. Dist. LEXIS 62042 (E.D.N.Y. Apr. 24, 2017) (finding that (1) an officer had probable cause to arrest based on a victim complaint; (2) probable cause did not dissipate when, as here, the officer closed the case "C-12" but kept an I-card active; and (3) the arresting officers were entitled to rely on an I-card indicating probable cause to arrest based on the collective knowledge doctrine).

For the same reasons, the defendants are entitled to summary judgment on Rao's state law claims for false arrest and false imprisonment. *See, e.g.*, *Zanghi v. Inc. Vill. of Old Brookville*, 752 F.2d 42, 45 (2d Cir. 1985) ("It is abundantly clear that a finding of probable cause will defeat state tort claims for false arrest [and] false imprisonment . . .").

### D. *Qualified Immunity*

Even if the sum of these circumstances – questions about Khan's reliability, Rao's letter about Khan's false allegations, Starling's decision not to prosecute, and the delay in Rao's arrest – vitiated probable cause, the defendants had "arguable probable cause." They therefore are entitled to qualified immunity, which shields government defendants if their "action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken." *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010) (internal quotation marks omitted). In the context of a false arrest claim, an officer is entitled to qualified immunity if he had at least "arguable probable cause." *Dufort v. City of New York*, 874 F.3d 338, 354 (2d

Cir. 2017) (internal quotation marks omitted).  Arguable probable cause exists when "officers of reasonable competence could disagree on whether the probable cause test was met."  *Id.* (internal quotation marks omitted).

Warmhold attempted to corroborate Khan's story by visiting the Chase Bank where she withdrew $25,600, interviewing one of Rao's employees, and sending another officer to interview Rao at his home.  Even if Warmhold should have done more to investigate the circumstances surrounding Khan's payment to Rao, the work he undertook certainly gave him arguable probable cause.  This entitles Warmhold, and, by extension, Cabrera and Gridley, to qualified immunity, and summary judgment is therefore appropriate.  Similarly, under the New York common-law equivalent of qualified immunity, summary judgment on the defendants' state law claims is appropriate.  *See Jenkins v. City of New York*, 478 F.3d 76, 86 (2d Cir. 2007).

Accordingly, the defendants' motion for summary judgment on Rao's state and federal false arrest claim, as well as his state false imprisonment claim, is granted.

## II.     Malicious Abuse of Process[12]

The focus of Rao's abuse of process claim is that he was arrested so that Warmhold could extort a bribe from Rao.  (Opp'n at 25.)  The sum of Rao's allegations is that while he was under arrest, Warmhold pressured him to pay $100,000 and, in exchange, would allow Rao "to do [his] business as [he] wants."  (Rao Dep. at 5.)  The defendants argue that Rao has failed to state a claim of abuse of process, and that probable cause to arrest is dispositive with respect to Rao's abuse of process claim.  (Defs.' Mem. at 19.)  For the reasons stated below, the Court grants summary judgment on this claim as to Cabrera and Gridley, but denies it as to Warmhold.

---

[12] In *Cook v. Sheldon*, the Second Circuit held that Section 1983 liability "may lie for malicious abuse of criminal process" as a violation of the Due Process Clause of the Fourteenth Amendment.  41 F.3d 73, 80 (2d Cir. 1994).

New York law recognizes an abuse of process claim against a defendant who "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (internal quotation marks omitted). "The crux of a malicious abuse of process claim is the collateral objective element." *Kraft v. City of New York*, 696 F. Supp. 2d 403, 416 (S.D.N.Y. 2010). To survive a motion for summary judgment in this case, the Court must find that, taking the record in the light most favorable to Rao, the facts suggest that the defendants misused process for an improper purpose.

There is an initial question of whether the Court can even consider Rao's allegations of extortion. The defendants urge the Court to ignore the accusations, arguing that "nothing in the record" supports Rao's claim and that no facts "substantiate this self-serving statement." (Defs.' Mem. at 20.) The defendants cite *D'Amico v. City of New York* for the proposition that Rao "may not rely on merely conclusory allegations nor speculation. . ." 132 F.3d 145, 149 (2d Cir. 1998). Rao's allegation that Warmhold pressured him to make a $100,000 payment, however, is neither conclusory nor speculative because it is contained in sworn testimony and would be admissible at trial. *See* Fed. R. Evid. 801(d)(2). Whether Warmhold said what Rao claims he said raises "a question of 'he said, she said,' on which the court cannot . . . take a side at the summary judgment stage." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010); *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) ("[C]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.").

### A. Legal Process

An arrest may constitute legal process for the purposes of a malicious abuse of process claim. The Second Circuit has described the tort as limited to abuses of legal proceedings and "court issued" process. *See, e.g.*, *Weiss v. Hunna*, 312 F.2d 711, 716 (2d Cir. 1963); *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) (citing *Mormon v. Baran*, 35 N.Y.S.2d 906, 909 (Sup. Ct. 1942) for the proposition that legal process means that a court issued the process). Courts have construed this definition broadly, however, and have read "court-issued process" to include arraignments, summonses, and, notably, arrests. *See, e.g.*, *TADCO Constr. Corp. v. Dormitory Auth. of N.Y.*, 700 F. Supp. 2d 253, 272 (E.D.N.Y. 2010) (arrest constitutes legal process for the purposes of a malicious abuse of process claim); *Widget v. Town of Poughkeepsie*, No. 12-CV-3459 (ER), 2013 U.S. Dist. LEXIS 37138, at *24 (S.D.N.Y. Mar. 18, 2013) (same); *Crockett v. City of N.Y.*, No. 11-CV-4378 (PKC), 2015 WL 5719737, at *10 (E.D.N.Y. Sept. 29, 2015) (same); *Pinter v. City of New York*, 976 F. Supp. 2d 539, 569 (S.D.N.Y. 2013) (same); *Goldring v. Zumo*, No. 14-CV-4861 (BMC), 2015 WL 148451, at *3 (E.D.N.Y. Jan. 12, 2015).

In *Crockett*, for instance, the plaintiff alleged that the defendants had arrested him in order to "conceal their own misconduct" and "escape disciplinary charges and potential loss of employment." 2015 WL 5719737, at *11. The court found that the arrest was legal process and concluded that a jury could find in the plaintiff's favor. Here too, the Court finds that Rao's arrest, "if executed by the [defendants] for a collateral objective outside the legitimate ends of the process, satisfies the first element of an abuse of process claim." *Id.* at *10 (internal quotation marks omitted). As Rao alleges, Warmhold sought to extort Rao by issuing process – the arrest. *Cf. Widget*, 2013 U.S. Dist. LEXIS 37138, at *24 ("While arrest may constitute

regularly issued process subject to abuse, Plaintiff does not allege that Defendants tried to compel or prevent any act by issuing process.").

### B. Improper Purpose

The question remains, then, whether Rao was arrested for an improper purpose – that is, with an intent to do harm and with a collateral purpose. The case law distinguishes between a malicious motive *and* an improper purpose. The former, by itself, is insufficient to state a claim of abuse of process; the plaintiff must also allege that the defendant acted primarily to achieve an improper objective. *See, e.g.*, *Savino*, 331 F.3d at 77. Plaintiffs must claim that the defendants "aimed to achieve a collateral purpose beyond or in addition to" the arrest. *Id.* Courts have permitted abuse of process claims to go forward where, for example, the defendant allegedly arranged for the plaintiff to be arrested for trespassing in order to influence a separate contract dispute. *TADCO Constr. Corp.*, 700 F. Supp. 2d at 272. Similarly, allegations that a defendant manufactured false assault charges in an attempt to save his job satisfied the collateral objective requirement because "safeguarding one's own employment lies outside the legitimate goal of criminal process." *Hernandez v. Wells*, No. 01-CV-4376 (MBM), 2003 WL 22771982, at *8–9 (S.D.N.Y. Nov. 24, 2003). By contrast, arresting someone as retaliation reveals a malicious motive, but does not by itself reflect "a collateral purpose beyond or in addition to . . . criminal prosecution." *Savino*, 331 F.3d at 77. In short, a malicious abuse of process claim requires "an ulterior purpose such as the infliction of economic harm, extortion, blackmail, or retribution." *Hoyos v. City of New York*, 999 F. Supp. 2d 375, 391 (E.D.N.Y. 2013).

Here, a jury could credit Rao's allegation that Warmhold effected Rao's arrest in order to extort a bribe from him. At his deposition, Rao testified that, at the station following his arrest, Warmhold suggested that he and Rao "talk business," and that Warmhold pressured Rao to make

a $100,000 payment to the "police welfare society." (Rao Dep. at 5.) In exchange, Warmhold offered to allow Rao to "do your business as you want." (*Id.*) When he refused to pay, Warmhold hit him in the face with the butt of his gun. (*Id.* at 6.) By its terms, this is precisely the type of harm that an abuse of process claim is meant to remedy.

In addition, Warmhold taunted Rao, asking him "Where is your DA now, where is your attorney now," and then informed him that "We don't work for anybody. We don't work for [the] DA or anybody." (Rao Dep. at 5.) This too lends some support to the notion that Warmhold arrested Rao not as part of his joint, legitimate investigation with the District Attorney's Office into Khan's complaint, but to accomplish a malicious objective. Of course, the defendants dispute that any of this happened. But this material dispute of fact precludes the grant of summary judgment.

### C. Probable Cause

The defendants argue that Rao's abuse of process claim fails because probable cause is a defense. (Defs.' Mem. at 19.) They point out that to state a claim, the plaintiff must show that the defendant has acted with an "intent to do harm *without excuse or justification*." (*Id.*, quoting *Savino*, 331 F.3d at 76.) Some district courts have interpreted this element to mean that probable cause – a type of legal justification – is a defense to a malicious abuse of process claim. *See, e.g.*, *Sforza v. City of New York*, No. 07-CV-6122 (DLC), 2009 WL 857496, at *17 (S.D.N.Y. Mar. 31, 2009); *Pinter*, 976 F. Supp. 2d at 570; *Widget*, 2013 U.S. Dist. LEXIS at *25; *Almonte v. City of New York*, No. 03-CV-5078 (ARR), 2005 WL 1229739, at *5 (E.D.N.Y. 2005); *Granato v. City of New York*, No. 98-CV-667, 1999 WL 1129611, at *7 (E.D.N.Y. Oct. 18, 1999); *Hickey v. City of New York*, No. 01-CV-6506 (GEL), 2004 WL 2724079, at *6 (S.D.N.Y. Nov. 29, 2004).

Other district courts have concluded the opposite. *See, e.g.*, *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 618 (E.D.N.Y. 2017) ("The Second Circuit has long recognized that probable cause is not a complete defense to malicious abuse of process."); *TADCO Constr. Corp.*, 700 F. Supp. 2d. at 272; *Goldring v. Zumo*, No. 14-CV-4861, 2015 WL 148451, at *5 (E.D.N.Y. Jan. 12, 2015); *Mangino v. Inc. Vill. of Patchogue*, 814 F. Supp. 2d 242, 247 (E.D.N.Y. 2011). The Second Circuit has recently acknowledged this disagreement in the district courts, but declined to resolve it.[13] *Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 959 (2d Cir. 2015). For several reasons, the Court agrees with those opinions that hold that probable cause is not a defense.

First, there is clear, albeit fairly old, Second Circuit case law that explicitly rejects the notion that probable cause defeats an abuse of process claim. *See, e.g.*, *Lodges 743 and 11746, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Aircraft Corp.*, 534 F.2d 422, 465 n.85 (2d Cir. 1975) ("Abuse of process . . . does not depend upon whether or not the action was brought without probable cause."); *Weiss*, 312 F.2d at 717 (the "gist of the tort of abuse of process" is the "misusing or misapplying process justified in itself for an end other than that which it was designed to accomplish.").

Moreover, many of the district courts that have held that probable cause is a defense have done so because the plaintiff argued the court should infer malice or intent to harm from a lack of probable cause. On those facts, once the court finds probable cause, there is no evidence of an

---

[13] In *Mangino*, the Second Circuit offered some insight regarding the confusion surrounding the role of probable cause in an abuse of process claim. *Mangino*, 808 F.3d at 19–20 n.8. Namely, New York state courts have explained that plaintiffs are required to show that the defendant acted with intent to do harm without "economic or social excuse or justification." *Bd. of Educ. v. Farmingdale Classroom Teachers Assoc.*, 38 N.Y.2d 397, 403 (1975). The Second Circuit has on occasion echoed the instruction that the excuse or justification be social or economic, but, in other cases, it has referred merely to "excuse or justification" and has dropped the additional descriptors. *See, e.g.*, *Cook*, 41 F.3d at 80.

improper collateral purpose, and, accordingly, the claim fails. *See Mangino*, 814 F. Supp. 2d at 251 (collecting cases). But even in those cases, probable cause is not an absolute defense to an abuse of process claim. Instead, it functions as a defense when the only evidence of an improper purpose is the alleged lack of probable cause, and the court finds that there was, in fact, probable cause. *See id.* at 249 ("If plaintiff can demonstrate the elements of abuse of process – including intent to harm and a collateral objective – without relying on any inference from a lack of probable cause, then such a claim can survive even with probable cause.").

Here, though Rao argues that the Court should infer malice from a lack of probable cause, his argument does not rest on the absence of probable cause alone. Instead, he emphasizes that Warmhold knew Starling did not intend to prosecute Rao prior to Rao's arrest and points to the extortion allegations as substantive evidence from which a jury could infer that the defendants arrested him only to extort money from him. (Opp'n at 25.) Even though the defendants had probable cause to arrest Rao, this is not fatal to the malicious abuse of process claim.

Rao has provided no evidence, however, that arresting officers Cabrera and Gridley had any improper objective in effectuating his arrest. Nothing in the record indicates that Cabrera and Gridley arrested Rao for any collateral purpose, and Rao has not indicated that they were present for or involved in Warmhold's attempts to extort him. *See Iqbal*, 556 U.S. 662, 677 (2009) ("Absent vicarious liability, each Government official . . . is only liable for his or her own misconduct."); *accord Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014). Accordingly, Rao does not have a viable abuse of process claim against Cabrera and Gridley.

### D. *Qualified Immunity*

Is someone who is alleged to have solicited a bribe entitled to qualified immunity?  The question nearly answers itself.  Qualified immunity protects government actors from liability for civil damages by giving "officials breathing room to make reasonable but mistaken judgments about open legal questions."  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (internal quotation marks omitted).  It shields "all but the plainly incompetent and those who knowingly violate the law."  *Rodriguez v. City of New York*, 72 F.3d 1051, 1065 (2d Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  No objectively reasonable officer would have thought that extorting a bribe was justified under these circumstances – or *any* circumstances.  As a result, qualified immunity does not protect Warmhold from liability in this case.  *See, e.g.*, *Tellier v. Fields*, 280 F.3d 69, 85 (2d Cir. 2000) (finding that keeping an inmate in solitary confinement for 514 days without affording him any of the procedural protections outlined in 28 U.S.C. § 541.22 was a knowing violation of the law, and therefore defendants were not entitled to qualified immunity); *Dufort*, 974 F.3d at 354 (finding that qualified immunity is inappropriate where the defendant is alleged to have placed the plaintiff in a defective lineup, extracted an identification, and then withheld the suspect nature of the identification from prosecutors and the grand jury because such "knowing" violations of the plaintiff's constitutional rights would "be enough to overcome the protection of qualified immunity" if proven at trial).

The Second Circuit's decision in *Mangino* does not displace this conclusion, as the defendants urge the Court to find.  808 F.3d at 959.  In *Mangino*, the plaintiff received summonses for failure to obtain a rental permit and then challenged the summonses in court.  While his case was pending, the Village prosecutor allegedly told the plaintiff that he "would be hit with a barrage of summonses" if he did not settle the litigation.  *Id.* at 953.  The court

acknowledged the "confusion" among the district courts about whether probable cause constitutes a defense to an abuse of process claim, and found that the "very existence" of this confusion entitled the defendant to qualified immunity. *Id.* at 959. The court concluded that, in light of the probable cause to issue the summonses in the first place, a reasonable officer, and even reasonable judges, could have thought that issuing the additional tickets was lawful.

This case is quite different. Unlike the issuance of additional summonses in *Mangino*, the "unlawfulness" of Warmhold's alleged bribe is "apparent." *Connell v. Signoracci*, 153 F.3d 74, 80 (2d Cir. 1998). Every reasonable officer knows that he cannot use an arrest as a vehicle for extortion. The open legal question about whether and when probable cause is a defense to an abuse of process claim does not change the fact that the unlawfulness of soliciting a bribe is apparent. Qualified immunity does not protect those who "knowingly violate the law," and, therefore, Warmhold is not entitled to qualified immunity on Rao's abuse of process claim.

**CONCLUSION**

For the reasons stated above, the defendants' motion for partial summary judgment (Doc. No. 64) is granted in part and denied in part. Rao's false arrest claim as to all defendants is dismissed. Rao's remaining claims are: (1) abuse of process as to defendant Warmhold only; (2) excessive force, assault and battery and failure to intervene against defendants Warmhold, Gridley and Cabrera. This case is recommitted to Magistrate Judge Bloom for all pre-trial proceedings.

SO ORDERED.

Dated: Brooklyn, New York
      March 29, 2018

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
United States District Judge